Devin A. McRae, State Bar Number 223239
*dmcrae@earlysullivan.com*
Peter Scott, State Bar Number 247786
*pscott@earlysullivan.com*
Lisa L. Boswell, State Bar Number 190304
*lboswell@earlysullivan.com*
EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

Attorneys for Plaintiff
NANCY WRIGHT PATCH

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

NANCY WRIGHT PATCH, an individual,

Plaintiff,

vs.

STATE FARM GENERAL INSURANCE COMPANY, an Illinois Corporation; STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation; and DOES 1-10, inclusive,

Defendants.

Case No.: 8:23-cv-02024

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. **Breach of Insurance Contract**
2. **Breach of the Implied Covenant of Good Faith and Fair Dealing**
3. **Violation of California Business & Professions Code § 17200, et seq.**

Plaintiff Nancy Wright Patch ("Plaintiff" or "Patch") brings this action against Defendants State Farm General Insurance Company, State Farm Mutual Automobile Insurance Company (collectively, "State Farm"), and Does 1 through 10, inclusive, as follows:

## I. INTRODUCTION

1. "Like a good neighbor, State Farm is there," is one of the most insidious and misleading corporate taglines in history. The advertisements are ubiquitous, most often featuring highly-paid celebrity athlete spokespersons run during major sporting events. The company certainly doesn't skimp on its advertising spend to sell its insurance policies across the nation. Yet just about any State Farm insured who has suffered an actual loss will tell you that any true motto would relate to sophisticated and dishonest schemes and tactics to dishonor its policy obligations and missing no opportunity to squeeze and vilify its own insureds when they are at their most vulnerable. In reality, State Farm is not the sort of neighbor anyone would want to have.

2. This case arises from the bad faith of State Farm in adjusting a devastating fire and smoke loss to a multi-million-dollar home in the coveted private gated community of Coronado Pointe in Laguna Niguel sustained in the catastrophic May 2022 Coastal Fire. State Farm has unreasonably denied Plaintiff's tendered claims, unreasonably delayed payment of undisputed losses and underpaid Plaintiff's insurance claim without proper cause, including without limitation by failing to conduct prompt and thorough investigations of Plaintiff's sustained losses, issuing low-ball repair estimates, and walking back State Farm's clearly indefensible positions only when challenged by the insured. As a result of these bad faith claims handling tactics, nearly a year and a half after the fire, Plaintiff is still owed over a million dollars in insurance proceeds needed to commence repair of her family home and continuing to incur substantial temporary housing expenses which State Farm refused to cover under Plaintiff's homeowner's policy. At the worst time in her life,

State Farm has been the sort of neighbor that Plaintiff would not wish on anyone.

3. Plaintiff is informed and believes that State Farm has a company-wide policy to "delay, deny, and defend" tendered insurance claims, wherein it delays providing policy benefits to which the insured is plainly entitled, takes initial unreasonable coverage positions and forces the insureds to retain their own experts and attorneys out of pocket to challenge State Farm's positions, then, when challenged, incrementally retreats from the completely unreasonable coverage positions. If not challenged, State Farm's initial lowballed coverage positions prevail and allow it to evade its policy obligations at fractions of fractions on the dollar.

## II. PARTIES

4. Plaintiff Nancy Wright Patch is an individual residing in the State of California, County of Orange.

5. State Farm General Insurance Company ("State Farm General") is a corporation registered to conduct business within the State of California, incorporated under the laws of and with its principal place of business in the State of Illinois.

6. State Farm Mutual Automobile Insurance Company ("State Farm Auto") is a corporation registered to conduct business within the State of California, incorporated under the laws of and with its principal place of business in the State of Illinois. On information and belief, State Farm Auto is the parent of State Farm General and State Farm General is a wholly owned subsidiary and/or affiliate of State Farm Auto.

7. The true names and capacities of Defendants sued herein as Does 1 through 10, inclusive ("Does," collectively with State Farm, "Defendants"), are presently unknown to Plaintiff, and therefore are sued under fictitious names. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of Does when they are ascertained.

8. On information and belief, Defendants are, and at all times mentioned herein, were, the agents, servants and/or employees of each of the other Defendants,

and each of them was acting within the scope of its, his or her authority as the agent, servant and/or employee of each other. On information and belief, Defendants performed the acts and conduct herein alleged directly, aided and abetted the performance thereof or knowingly acquiesced in, ratified and accepted the benefits of such acts and conduct, and therefore each of the Defendants is liable to the extent of the liability of the Defendants as alleged herein; consequently, all Defendants are jointly and severally liable to Plaintiff for the damages sustained as a proximate result of their conduct.

9. On information and belief, at all times herein material, each Defendant was completely dominated and controlled by its co-Defendants and each was the alter-ego of the other. Whenever and wherever reference is made in this Complaint to any conduct by Defendant or Defendants, such allegations and references shall also be deemed to mean the conduct of each of the Defendants, acting individually, jointly and severally. Whenever and wherever reference is made to individuals who are not named as Defendants in this Complaint, but were employees and/or agents of Defendants, such individuals at all relevant times acted on behalf of Defendants named in this Complaint within the scope of their respective employment.

## III. JURISDICTION AND VENUE

10. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of attorneys' fees and costs. In this regard, the amount in dispute in connection with the below described insurance claim totals in excess of $1,000,000.

11. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(a) because, among other things, a substantial part of the events, omissions, transactions and occurrences giving rise to the claim occurred in this judicial district, and the Property is located in this judicial district.

## IV. GENERAL ALLEGATIONS

### A. State Farm's Business Model

12. State Farm's business model is predicated on two basic streams of revenue. First, State Farm receives premiums from its insureds. If the total amount of premiums exceeds the total amount of monies paid out on insurance claims (i.e. "losses"), then State Farm experiences what it terms an "underwriting gain." Second, State Farm generates revenue through investment income – that is the return on investment of the policy holders' premiums that State Farm invests on its own behalf.

13. State Farm is required to set aside a certain amount of its cash in order to pay losses pursuant to its policy obligations to its insureds. These reserves are termed "loss reserves." State Farm is not permitted to invest these loss reserves as it would other cash on hand as these reserves must be preserved to pay out on claims. The amount of reserves established by State Farm can have a significant impact on its profits. Over-reserving can result in lost profits as there are less funds available for investment and loss reserves show as a liability on its balance sheet. Conversely, under-reserving, i.e., setting aside less money to pay claims, can boost profitability as more funds are freed up to invest on its own account.

14. State Farm thus has an incentive to not only under-reserve on claims, but also to delay proper investigation and payment of legitimate claims in order to earn investment income on these funds before they must be added to the reserves or ultimately paid out to its insureds. These financial incentives cause State Farm to place its own financial interests above those of its insureds and to minimize and delay any payments to its insureds as long as possible. State Farm's entire business model is set up to violate the California Fair Claims Settlement Practices Act.

15. Plaintiff is further informed and believes that State Farm's compensation model and bonus incentives for its officers, directors, managerial employees and claims adjusters incentivize and reward the delay, denial and underpayment of claims to State Farm's insureds, including without limitation

overemphasizing the generation of new policies and policy holders rather than properly handling tendered claims of existing policy holders and insureds.

**B. The Claim**

16. The Property is an ocean view hilltop single family residence in the exclusive Coronado Pointe guard gated community in Laguna Niguel. The five-bed, six and one half-bath, nearly 5,300 square foot home. The home boasts immaculately manicured landscaping, a theater room with kitchenette, an 800 square foot balcony upstairs and a covered loggia with outdoor dining room below, an outdoor kitchen with barbecue, a large fire pit with built-in seating, a pool and spa with sweeping ocean and canyon views.

17. State Farm issued Homeowners Policy No. 75-33W8-83G (the "Policy") to Plaintiff insuring, among other things, her Property, her personal property maintained within her home and the increased cost of living resulting from the loss of use of her Property resulting from perils covered in the Policy. The Policy unequivocally identifies fire and smoke as a covered peril. The basic applicable coverages and corresponding policy limits are as follows:

| Coverage | Amount |
|---|---|
| Coverage A – Dwelling | $2,237,496 |
| - Option ID, Increased Dwelling | $447,499.20 (20% of Cov. A limit) |
| Option OL-Building Ordinance or Law | $559,374 (25% of Cov. A limit) |
| Dwelling Extension | $223,750 |
| Coverage B – Personal Property | $1,678,122 |
| Coverage C – Additional Living Expenses | $671,249 up to 24 Months[1] |

[1] These coverages and coverage limits are also subject to numerous other policy provisions that, where applicable, substantially increase these policy limits.

18. On May 11, 2022, at approximately 2:45 p.m., a "fire began in the Aliso and Wood Canyons Wilderness Park. Unfortunately, strong winds shifted the wildfire, [which came to be] known as the Coastal Fire, toward the Coronado Pointe neighborhood in the City of Laguna Niguel. Fueled by thick brush, strong wind, and steep topography, the fire prompted a mandatory evacuation of 900 homes. Over 60 different types of resources from throughout the region were utilized to battle the flames." https://www.cityoflagunaniguel.org/1502/Coastal-Fire

19. On May 11, 2022 at 3:11 p.m., Plaintiff took the following photograph from her backyard depicting the fire on the hill immediately west of Aliso Canyon Road:



20. The Coastal Fire burned approximately 200 acres, destroyed 20 residences, and damaged an additional 11 structures. The Coastal Fire affected

communities throughout Orange County including Laguna Niguel, Aliso Viejo, and unincorporated Orange County. More than 900 people were evacuated.[2]

21. Sadly, the fire quickly advanced toward Plaintiff's Property resulting in her and her family's mandatory evacuation. The Property and its contents sustained extensive fire and smoke damage as a result of the Coastal Fire, making it uninhabitable and instantly leaving Plaintiff and her family homeless with only the clothes on their backs and the items they had time to take with them when they evacuated. The houses on both sides of the Property burned to the ground.

22. Plaintiff promptly tendered a claim to State Farm under the Policy and State Farm unequivocally accepted coverage without a reservation of rights.

23. State Farm conducted its initial inspection of the loss on or about May 14, 2022. On that date, State Farm stated in writing that it would prepare a detailed building damage estimate for the repairs to the Property which would specifically identify and itemize all repairs and their related expenses and that it would assist Plaintiff with preparation of a detailed list of the non-salvageable items involved in this loss. From the outset, it was apparent that State Farm's aim was to minimize the damage and scope of repair and remediation necessary to the home. The inspection by State Farm was cursory with large portions of the dwelling and dwelling extension left only superficially investigated.

24. On or about May 24, 2022, Plaintiff, recognizing that State Farm was not going to cooperate in fully compensating her for her loss as required under the Policy, retained a public adjuster Advent Adjusting Services LLC to assist with the claim.

---

[2] Coastal Fire destroys at least 20 homes in Laguna Niguel, CBS LOS ANGELES, (May 12, 2022), https://www.cbsnews.com/losangeles/live-updates/coastal-fire-destroys-homes-forces-evacuations-in-laguna-niguel/

25. On or about July 7, 2022, State Farm approved an initial estimate of $296,000 for Coverage A – Structure. However, State Farm inexplicably did not pay this initial damage estimate until November 2022--6 months after the fire. Moreover, the estimate was absurd on its face and nowhere near sufficient to fully remediate the multi-million-dollar dwelling and dwelling extension to its pre-loss condition.

26. Once Plaintiff finally received those funds and due to the proximity of the holidays, Plaintiff had a difficult time finding competent contractors who were willing to start a new project in the midst of the holidays and before the end of the year.

27. In December 2022, State Farm revised its estimate by a whopping 430% to $1,274,379 and made a supplemental payment of $736,936; however, the amount of the State Farm payment was short by $241,433.29 which appears to be attributed to State Farm's erroneous double deduction of its first payment to her. The revised December 2022 State Farm estimate is over 123 pages with over 1,000 line-items. Yet, Plaintiff was forced to shift through State Farm's incomprehensible revised estimate to identify the source of this six-figure discrepancy and other areas where State Farm had undervalued the loss claim.

28. State Farm's revised estimate grossly underestimates the scope of damage and replacement costs by $1 million or more. State Farm systematically omitted items (steam shower in the master bathroom, built-in closet cabinets, and whole-house entertainment system, etc.), grossly underestimated labor costs (demolition costs, electrical costs, plumbing costs, etc.), misidentified the materials (ceramic tiles for limestone floor tiles, MDF baseboards instead of limestone baseboards, etc.), made arbitrary decisions regarding the appropriate remediation (remove the slab stone countertops and cabinets to ***wash*** and reinstall), understated the number of items (State Farm counted approx. 51 electrical outlets when there are over 190 outlets and counted 4 speakers in the theater room when there were 9 speakers, etc.), and systematically underestimated replacement costs (cost to repair

or replace custom wrought iron, flooring, cabinet and countertop, bathroom fixtures, windows and doors, HVAC, etc. For example, electrical estimate of $13,955 when a respected contractor's bid is over $740,000). Plaintiff was left with no option but to take State Farm to task on these and many other needless disputes which was all part of State Farm's delay, deny, and defend claims handling scheme to deny Plaintiff her rightful benefits of the Policy.

29. While Plaintiff's total loss contents list was submitted to State Farm in September 2022, State Farm took no action on that portion of the claim for over 6 months. The State Farm adjuster simply stated that the contents list was "under management review." State Farm still has not paid the contents claim.

30. State Farm's handling of Plaintiff's claim was further delayed by the revolving door of State Farm's assigned adjusters and adjustment teams who have touched this claim. In the last 17 months, there have been no less than 4 adjusters and adjustment teams assigned to this claim since the fire, resulting in a recurring loss of continuity and additional delays in processing this claim to its insured's detriment.

31. Plaintiff and her family consisting of 5 people and several pets (3 dogs, and 2 birds at the time of loss) that have been displaced since May 11, 2022. Immediately after the fire, Plaintiff and her family remained temporarily housed at a local resort at a cost of approximately $4,000 per night ($120,000 a month). State Farm repeatedly denied Plaintiff's many requests to move out of the resort and into affordable long-term rental housing to economize the expenditure of the Policy's ALE benefits. In addition to denying these requests, State Farm delayed its approval of long-term housing until all reasonably priced rental houses were taken.

32. In May 2022, the rental market in coastal Orange County was very hot, with high demand and limited inventory due to the Coastal Fire and regular summer rentals. Due to the absorbent expense, inadequate living space, and other factors, Plaintiff wanted to move out of the resort as soon as possible, but few rentals on the market would accommodate her family's needs. She found a rental in Laguna Beach

for $30,000 per month for a one-year lease. This monthly rent rate was one-fourth of the cost of the remaining at the resort. Plaintiff applied and was accepted to rent the Laguna Beach house for a year, but State Farm inexplicably and foolishly refused to approve a one-year lease.

33. State Farm arbitrarily decided that it would only pay for a 3-to-6-month lease term with monthly extensions as needed after that. However, month-to-month rental rates in the coastal Orange County area are 2 to 4 times the monthly rental rate for a year lease, so the overall rental cost was the same or higher for a shorter rental duration.

34. The exorbitant cost of temporary housing at the Monarch Beach Resort was rapidly burning through the ALE benefits. After State Farm rejected Plaintiff's request for rental housing for a year and in an effort to economize the ALE benefits that State Farm was so willing to recklessly exhaust at an accelerated rate, Plaintiff and her family checked out of the resort and drove to Oregon to stay with relatives while Plaintiff sorted through the long-term housing issues.

35. The very next month in mid-June 2022, State Farm reversed itself and approved Plaintiff's request for rental housing with a one-year lease, but by that time all reasonably priced housing options were already rented. With virtually no other options, Plaintiff ended up renting a house in Laguna Beach at $50,000 per month ($600,000 for the year) for a one-year lease; this same house was renting for $75,000 per month for a month-to-month lease. While this rental was far less than the cost of the Monarch Beach Resort at $120,000 per month, it was $20,000 per month *more* than the rental house that State Farm previously rejected at $30,000 per month. This further illustrates the negative impact of State Farm's earlier wasteful decision to deny the Plaintiff cheaper long-term housing options.

36. Due to State Farm's refusal to approve a cheaper year-long lease a month earlier, Plaintiff ended up renting a home that cost State Farm more than $240,000 per year more than the house she initially requested to rent. If State Farm

had approved the original rental request, the difference of $240,000 would be available to pay for Plaintiff's current monthly rent of $17,800 ($213,000 for year) and Plaintiff's other ALE expenses, which State Farm has and continues to refuse to reimburse.

37. In spite of the fact that State Farm's claims processing and payment delays have caused a resulting delay in the repair of the Property and, by extension, Plaintiff's need for rental housing and ALE coverage for another year, State Farm terminated Plaintiff's ALE benefits as of June 2023 on the grounds that the Policy's ALE benefits had been exhausted. In fact, State Farm wastefully burned through the Policy's ALE benefits intended to last 24 months in half that time, leaving Plaintiff and her family without housing. The Property, which now sits demolished down to the studs in most rooms, remains uninhabitable. Plaintiff is incurring $17,800 a month in rent for temporary housing for which State Farm refuses to reimburse her.

38. To make matters worse, Plaintiff fractured her spine after the fire, requiring hospitalization and emergency spinal surgery in June 2023 to stabilize the spinal fracture. Based upon information and belief, this spinal injury occurred while Plaintiff, who is in her 60s, was lifting and moving heavy boxes and objects during the personal property inspections with State Farm and in connection with her move to new rental housing upon the expiration of the ALE in June 2023.

39. In or about March 10, 2023, Plaintiff terminated her contract with Advent Adjusting Services, including immediately revoking Advent's authorization to communicate with State Farm and any other third party regarding her claim arising from the Coastal Fire. On or about March 10, 2023, Plaintiff notified State Farm of the same in writing.

40. It has been over 17 months since the fire (May 11, 2022), and State Farm still has not finalized the scope of work and total replacement costs for the Property. Moreover, State Farm is unreasonably withholding over $759,000 in Policy benefits owed to Plaintiff and continues to communicate with Advent Adjusting Services

regarding Plaintiff's claim without Plaintiff's permission and in direct contravention of Plaintiff's instructions to State Farm. Specifically, State Farm has approved payment of additional sums of $711,717.82 under Coverage B and $47,878.50 under Coverage A to Plaintiff which State Farm has failed and refused and continues to fail and refuse to pay Plaintiff without reasonable justification.

41. State Farm will only agree to pay these funds to Plaintiff ***and*** Advent as co-payees effectively placing the interests of a third party above those of its insured. State Farm has also repeatedly rejected Plaintiff's reasonable proposals to permit the release of these desperately needed funds, whereby Plaintiff authorized State Farm to pay 90% directly to Plaintiff and to withhold 10% (or cut a check for 10% to both the Plaintiff and Advent, consist with the terms of Plaintiff's since terminated contract with Advent). State Farm has repeatedly rejected this proposal, once again placing Advent's interests above Plaintiff's interests. State Farm's withholding of these Policy benefits and refusal of Plaintiff's reasonable proposals to release those funds were done with State Farm Claims Manager John Grubaugh's express knowledge, authorization, ratification, and approval. State Farm has also wrongfully refused to provide Plaintiff with copies of its communications with Advent regarding this claim. State Farm's decision to protect and advocate for a third party to the direct detriment of its insured of over 30 years is simply unconscionable and textbook bad faith.

42. At the time of filing the instant action, the claim continues to be adjusted and a supplemental or amended pleading will be filed to address further items that arise in connection with the ongoing adjustment.

43. Plaintiff has been forced to retain legal counsel and incur legal fees, in addition to a public adjuster, in order to challenge State Farm's unreasonable positions and bad faith claims handling.

//

//

//

## FIRST CLAIM FOR RELIEF

**(Breach of Contract Against State Farm General, State Farm Auto and DOES 1-10)**

44. Plaintiff incorporates the foregoing paragraphs as though set forth in full herein.

45. At all material times, Plaintiff is and was the owner or beneficial owner of the Property insured by the Policy.

46. At all material times herein, Plaintiff was insured by State Farm under the Policy, which was in effect at all relevant times including on the dates of loss. The Policy is not attached to this Complaint due to privacy considerations, but is already in the possession, custody and control of State Farm and will be produced by Plaintiff in the discovery process.

47. According to the Policy, State Farm agreed to provide coverage to Plaintiff for loss or damage to the Property (including other structures), personal belongings contained therein as well as loss of use of the Property arising out of a covered loss. As stated in the Policy, fire and smoke damage are covered losses.

48. Plaintiff fulfilled all of her obligations under the Policy. Plaintiff paid the premiums and performed or substantially performed the promises agreed to under the Policy, including promptly notifying State Farm of the loss and preventing further loss to the best of her ability. In the alternative, any obligation or requirement that Plaintiff may have failed to fulfill was immaterial to State Farm's decision to issue the Policy and/or to State Farm's claims handling conduct or denial of Policy benefits.

49. State Farm breached its duties under the Policy by failing to provide the promised insurance coverage for the losses sustained by Plaintiff. Plaintiff has suffered damages as a direct and proximate result of State Farm's breaches. In addition to being denied the Policy's benefits after a loss, Plaintiff was forced to retain a public adjuster and legal counsel to obtain the Policy benefits owed by State Farm. State Farm maliciously disregarded the health and safety of Plaintiff and her family

in denying said Policy benefits.

**SECOND CLAIM FOR RELIEF**

**(Breach of Implied Covenant of Good Faith and Fair Dealing Against State Farm General, State Farm Auto and DOES 1-10)**

50. Plaintiff incorporates by reference the foregoing paragraphs as though set forth in full herein.

51. In every insurance policy, there exists an implied duty of good faith and fair dealing that the insurance company will not do anything to injure the rights of the insured to receive the benefit of the policy. State Farm breached its duty of good faith and fair dealing owed to Plaintiff by, including but not limited to, engaging in the following conduct:

a. Unreasonably and in bad faith, placed its own financial interests ahead of its insureds in violation of California's statutory, regulatory and common law;

b. Unreasonably and in bad faith failing to give at least as much consideration to the interests of its insureds as it gave to its own interests;

c. Unreasonably and in bad faith misrepresenting the terms of the Policy or the benefits and/or obligations contained therein relating to the coverages at issue;

d. Unreasonably and in bad faith failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the Policy;

e. Unreasonably and in bad faith failing to attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

f. Unreasonably and in bad faith delaying the investigation or payment of claims by requiring Plaintiff to submit duplicative, onerous and/or unnecessary documentation concerning proof of loss submissions;

g. Unreasonably and in bad faith failing to implement standards for the prompt investigation and processing of claims;

h. Unreasonably and in bad faith denying coverage despite all uncontroverted evidence requiring coverage;

i. Unreasonably and in bad faith failed to retain competent independent experts to assist in the fair, reasonable, objective and prompt investigation of the claim;

j. Unreasonably and in bad faith withheld payment of sums due and owing Plaintiff;

k. Unreasonably and in bad faith failed to investigate and process Plaintiff's claim for benefits;

l. Unreasonably and in bad faith failed to objectively investigate the claim;

m. Unreasonably and in bad faith failed to thoroughly investigate the claim;

n. Unreasonably and in bad faith ignored evidence supporting coverage;

o. Unreasonably and in bad faith failed to search diligently for evidence that supported payment of the claim; and

p. Unreasonably and in bad faith compelled Plaintiff to institute litigation to recover amounts due under the Policy.

52. State Farm's pattern of unfair practices constitutes institutional bad faith and evidences a conscious course of wrongful conduct that is firmly grounded in the established company policy of State Farm.

53. Plaintiff is informed and believes, and based thereon alleges, that State Farm committed institutional bad faith by other acts and omissions of which she is presently unaware but will be shown according to proof at trial.

54. State Farm's conduct was undertaken or approved by its officers or managing agents, who are and were responsible for claims supervision, operations, communications and decisions. This unreasonable conduct was undertaken on behalf of State Farm. Plaintiff is further informed and believes that State Farm's internal



claims handling policies and procedures and manuals instruct its managers, agents and employees to violate the California Fair Claims Settlement Practices Act.

55. State Farm had advance knowledge of the actions and conduct of said individuals and the conduct was ratified, authorized and approved by State Farm, including managing agents whose precise identifies are unknown to Plaintiff at this time and therefore identified and designated as Does 1 through 10.

56. As a further proximate result of State Farm's unreasonable conduct, Plaintiff was compelled to retain legal counsel and a public adjuster to obtain the benefits due under the Policy. State Farm is liable to Plaintiff for attorneys' fees, witness fees and costs of litigation reasonably necessary and incurred by her in order to obtain the Policy benefits.

57. State Farm intended for its conduct to cause injury to Plaintiff, State Farm engaged in despicable conduct carried out with a willful and conscious disregard of her rights and/or subjected her to cruel and unjust hardship in conscious disregard of her rights. State Farm's conduct constituted an intentional misrepresentation, deceit or concealment of material facts known to State Farm with the intention of depriving Plaintiff of property, legal rights and/or of causing other injury. State Farm's conduct constitutes malice, oppression or fraud under California Civil Code § 3294, entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of State Farm and deter future similar conduct.

## THIRD CLAIM FOR RELIEF

**(Violation of Business & Professions Code Section 17200, et seq. against State Farm General, State Farm Auto and DOES 1-10)**

58. Plaintiff incorporates by reference the foregoing paragraphs as though set forth in full herein.

59. This cause of action is brought under the authority of the California Supreme Court decision in *Zhang v. Superior Court*, 57 Cal. 4th 364 (2013), which held that insureds may bring first party claims under the Unfair Insurance Practices

Act ("UIPA") against insurers for bad faith conduct separate from the UIPA even if such common law tortious conduct also violates the UCL. California Business and Professions Code § 17200 provides: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." State Farm engaged in unlawful, unfair and/or fraudulent business practices pursuant to Business and Professions Code § 17200 et seq.

60. State Farm engaged in unlawful, unfair and/or fraudulent business acts or practices by virtue of its handling of Plaintiff's insurance claim as outlined in the preceding paragraphs. State Farm further engaged in unlawful, unfair and/or fraudulent business acts or practices by promising Plaintiff certain coverages within the Policy and then unjustifiably withholding payment of approved Policy benefits. As alleged herein, *State Farm in fact had no intention of paying these amounts in this and in other similar loss events in California*. Accordingly, State Farm violated Business and Professions Code § 17200 et seq., and engaged in unlawful, unfair and/or fraudulent business acts and/or practices.

61. Plaintiff was and is a party aggrieved who has suffered economic loss as a result of State Farm's unlawful, unfair and/or fraudulent business acts and/or practices, including but not limited to the loss of policy benefits, the *Brandt* damages sustained in this lawsuit, and premiums paid by Plaintiff for the Policy. Plaintiff has sustained such economic loss as alleged herein as a direct result of State Farm's acts.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this court enter judgment against each of State Farm General, State Farm Auto and Does 1 through 10, jointly and severally. The final judgment should set forth the following relief.

1. All benefits due under the Policy;



2. General damages, including mental and emotional distress, in an amount to be determined at trial, upon a finding of bad faith, including without limitation any fees incurred by Plaintiff with respect to her retention of her public adjuster;

3. Restitution to Plaintiff;

4. Attorney fees incurred pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813 in recovering amounts due under the Policy;

5. Punitive damages, in an amount to be determined at trial, upon a finding of bad faith committed with malice, oppression or fraud;

6. Pre-judgment and post-judgment interest, as provided by law;

7. Costs of suit incurred herein; and

8. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: October 27, 2023

EARLY SULLIVAN WRIGHT GIZER & McRAE LLP

By: */s/ Devin A. McRae*
Devin A. McRae
Peter Scott
Lisa L. Boswell
Attorneys for Plaintiff
NANCY WRIGHT PATCH

**DEMAND FOR JURY TRIAL**

Plaintiff Nancy Wright Patch hereby demands trial by jury for all issues so triable.

Respectfully submitted,

Dated: October 27, 2023

EARLY SULLIVAN WRIGHT GIZER & McRAE LLP

By: */s/ Devin A. McRae*
Devin A. McRae
Peter Scott
Lisa L. Boswell
Attorneys for Plaintiff
NANCY WRIGHT PATCH

